**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LARRY S. PARKINSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-04-1466-F |

**REPORT AND RECOMMENDATION**

Plaintiff Larry S. Parkinson seeks judicial review of the final decision by the Defendant Commissioner denying Plaintiff's application for disability insurance benefits. *See* 42 U.S.C. § 405(g). The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record ("AR"). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.   Procedural History**

Plaintiff filed an application for disability insurance benefits alleging an inability to work since June 1, 2001, based on cardiomyopathy and coronary artery disease. AR 67. Plaintiff's application was denied initially and on reconsideration. AR 27-28. Subsequently, a hearing was held before an Administrative Law Judge (ALJ), and after consideration of the

evidence, the ALJ found that Plaintiff was not disabled. AR 16-23. The Appeals Council denied Plaintiff's request for review. AR 5-7. Therefore, the decision of the ALJ is the final decision of the Commissioner.

## II.   The ALJ's Disability Determination

The ALJ followed the sequential evaluation process required by 20 C.F.R. § 404.1520 and first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 17, 22. At step two, the ALJ determined that Plaintiff suffers from severe impairments including cardiomyopathy, coronary artery disease, Hepatitis C, depression and chest pain. AR 19, 22. At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations. AR 19, 22. At step four, the ALJ determined Plaintiff retains the residual functional capacity (RFC) to perform substantially all of the full range of light work activity, limited to occasional climbing, balancing, kneeling, crouching, and crawling. AR 20-23.[1] The ALJ further found that Plaintiff could not perform his past relevant work of unit leader or mixer operator. AR 21, 22. At step five, the ALJ applied the Medical Vocational Guidelines (grids) set forth at 20 C.F.R. Pt. 404, supt. P, app. 2, Rules 202.14 and 202.15, to determine that a man of Plaintiff's age, education, and work experience who could perform substantially all of the full range of light work is not disabled. AR 21-22, 23. In

---

[1]The ALJ also noted that: "If someone can do light work, we determine that he can also do sedentary work unless there are additional factors such as loss of fine dexterity or inability to sit for long periods." AR 21-22.

making this determination, the ALJ noted that application of the grids is appropriate only if a claimant has the exertional RFC to perform substantially all of the seven primary strength demands required by work at the given level of exertion and has "no nonexertional limitations." AR 21.

### III.   Plaintiff's Claims Raised on Appeal

Plaintiff contends that the ALJ's RFC determination is erroneous because the ALJ failed to take into account the severity of his physical impairments and failed to consider limitations resulting from the mental impairments and pain[2] which the ALJ found to be severe at step two of the sequential evaluation process. Plaintiff states that the ALJ's decision is internally inconsistent in this respect. Plaintiff further states that the ALJ erred in failing to follow the treating physician rule with regard to the opinion of his treating physician, Dr. John Anderson.

---

[2]Plaintiff states, "The RFC also fails to fully address claimant's physical limitations due to ongoing pain." Plaintiff's Opening Brief at 7. The Plaintiff does not, however, develop this claim by discussing the ALJ's findings regarding pain. The ALJ found that "claimant's allegations of disabling pain and discomfort are not supported by credible facts and findings from which it can be concluded that he has an impairment that could reasonably be expected to cause the degree of pain and discomfort which he alleged." AR 20. The ALJ supported this statement by pointing to the lack of prescribed pain medication and the extent of Plaintiff's activities of daily living. The ALJ properly analyzed Plaintiff's allegations of pain, and his decision with respect to Plaintiff's complaints of pain is supported by substantial evidence in the record as a whole.

**IV.     Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). The Court will "meticulously examine the record and view it in its entirety" to determine whether the evidence supporting the Commissioner's decision is substantial in light of any contradictory evidence. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence" is evidence that a reasonable person might deem adequate to support the ultimate conclusion. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994); *Potter v. Secretary of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

If substantial evidence does not support the Commissioner's decision, or if the Commissioner fails to apply the correct legal standard, the Court must reverse the Commissioner's findings. *Washington v. Shalala*, 37 F.3d 1437, 1439-40 (10th Cir. 1994); *Descheenie v. Bowen*, 850 F.2d 624, 628 (10th Cir. 1988). The Court, however, may not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Castellano*, 26 F.3d at 1028.

## V.   Analysis

At step five of the sequential analysis, the burden shifts to the Commissioner to show that a claimant has retained sufficient RFC to perform work in the national economy, given the claimant's age, education and work experience. *See Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). To help evaluate whether there are sufficient jobs in the economy that a claimant can perform given his age, education and work experience, the Social Security Administration created Medical-Vocational Guidelines, also known as "the grids." *See* 20 C.F.R. pt. 404, subpt. P app. 2. Five degrees of residual functional capacity are outlined in the grids by general exertional level – sedentary, light, medium, heavy, and very heavy exertion. 20 C.F.R. § 404.1569a; *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (*citing Trimiar v. Sullivan*, 966 F.2d 1326, 1332 n. 22 (10th Cir. 1992)). If the ALJ finds that a claimant's exertional capacity, education, age, and skills fit precisely within the criteria of a particular grid level, the ALJ may conclude the claimant is not disabled. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

Use of the grids, however, is "predicated on an individual's having an impairment which manifests itself by limitation in meeting the strength requirements of jobs[.]" Therefore, the grids "may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental . . . impairments." 20 C.F.R. pt. 404 subpt. P, app. 2 §200.00(e). In this case, the ALJ applied the grids to find Plaintiff not disabled.

The record, however, leaves doubt as to whether the ALJ made an assessment of what limitations, if any, Plaintiff's mental impairment created in his ability to perform basic work activities. If Plaintiff has more than minimal non-exertional limitations in his ability to do basic work activities, the ALJ's application of the grids was inappropriate.

At step two of the sequential evaluation process, the ALJ found that Plaintiff suffers from severe impairments, including depression. An impairment is not considered "severe" at this threshold level unless it "significantly limit[s] the individual's physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1521. In making his step two and three findings, the ALJ relied upon a Psychiatric Review Technique form (PRTF) prepared by a consulting physician identifying Plaintiff's history of depression secondary to his physical condition. AR 153. The PRTF also indicates that Plaintiff suffers from a personality disorder with "inflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress, as evidenced by . . . pathologically inappropriate suspiciousness or hostility." AR 157. A psychological evaluation prepared by Dr. Leon Morris, Ed.D., includes findings consistent with that opinion:

> Severe antisocial features are evident in the claimant's personality. He appears to be a hostile, impulsive, rebellious person who shows a disregard for authority and external behavior standards, and he is likely to exhibit poor judgment and planning ability. This test pattern suggests much potential for legal difficulties, substance abuse, and interpersonal problems. He is also likely to be chronically suspicious and easily offended in interpersonal relationships, and he is likely to project blame and hostility to others and to be

> brooding and resentful. Furthermore, he appears to be a rather schizoid person who is likely to relate poorly to others.

AR 124. In Paragraph B of the PRTF, the consulting physician identified the degree to which Plaintiff has limitations in broad categories of functioning, finding a mild degree of restriction in his activities of daily living, a moderate degree of difficulty in maintaining social functioning, and no difficulties in maintaining concentration, persistence and pace. *See* AR 19, 160.

What is absent from the decision, however, is an assessment of the degree to which Plaintiff's mental impairments have resulted in limitations on his ability to do basic work activities, such as understanding, carrying out and remembering instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b). Although the ALJ summarized the PRTF findings and the psychological records from medical sources, AR 18-19, he did not carry forward his assessment of mental limitations into steps four and five of the evaluation process. He failed to discuss or make findings as to Plaintiff's mental limitations as they relate to his ability to perform work-related tasks, and no mental RFC assessment (documenting a function by function assessment of limitations on basic work activities) is included in the record. *See* SSR 96-8p, Assessing Residual Functional Capacity in Initial Claims ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions

contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.").

In light of the ALJ's finding that Plaintiff suffers from a severe medically determinable mental impairment, the ALJ's failure to make an assessment of work-related mental limitations is legal error. *See* SSR 85-16, Residual Functional Capacity for Mental Impairments ("[A]ll limits on work-related activities resulting from the mental impairment must be described in the mental RFC.  It is the responsibility of the . . . ALJ . . . to make findings as to the individual's ability to perform work-related activities (RFC).").

The ALJ also committed legal error in failing to specify the weight he had given to the opinion of Plaintiff's treating physician, Dr. John Anderson.  Dr. Anderson stated that he has been treating Plaintiff since October 1996.  He stated that Plaintiff suffers from hypertension, chest pain, shortness of breath, adjustment disorder and hepatitis.  He further stated that Plaintiff's medical records show he has a history of cardiomyopathy and coronary artery disease, hepatitis C, adjustment disorder with depressed mood, hypertension, tinnitus and mechanical low back pain.  He stated that Plaintiff is limited to lifting no more than 5 pounds frequently and 10 pounds occasionally and that he should be restricted to performing simple one- or two-step tasks with no repetitive work that requires frequent reaching, handling, or fingering with either extremity. Finally, Dr. Anderson stated that Plaintiff would

require frequent unscheduled rest breaks and could not perform jobs with more than minimal stress. AR 260.[3]

In reviewing the opinion of a treating source, an ALJ must first determine whether a treating source's opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). This determination, in turn, hinges on whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* (quotations omitted). In this case, the ALJ stated that the "the record did not contain clinical and laboratory findings to support the severe limitations." AR 20. This finding supports a conclusion that Dr. Anderson's opinion was not entitled to controlling weight. But resolving the "controlling weight" issue does not end the ALJ's responsibility with respect to opinions of treating physicians. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927. Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

[3] Dr. Anderson opined that Plaintiff would require frequent rest breaks of 10 to 15 minutes for every hour of work. When the ALJ included the limitation of frequent unscheduled rest breaks in a hypothetical question to the VE, the VE testified that "unscheduled rest breaks may preclude that type of [sedentary] work if it was in excess of 15 to 20 minutes every several hours." AR 291.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted).  After considering the pertinent factors, the ALJ must "give good reasons in [the] notice of determination or decision" for the weight he ultimately assigns the opinion.  20 C.F.R. § 404.1527(d)(2).  Finally, if the ALJ rejects the opinion completely, he must then give "'specific, legitimate reasons'" for doing so.  *See Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (*quoting Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

Here, the ALJ does not state what weight he ultimately gave to Dr. Anderson's opinion (whether he rejected it entirely or afforded it some deference), and there is no indication in the record what factors, if any, were considered in determining that weight.

In sum, the ALJ failed to follow the required steps in addressing the opinion of Plaintiff's treating physician.  Additionally, the ALJ failed to make an assessment of work-related mental limitations in determining Plaintiff's RFC. These legal errors require reversal and remand for further proceedings.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by October  20th , 2005.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  30th  day of September, 2005.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE